The BRICKMAN GROUP,
LTD., Appellant,

v.

CGU INSURANCE COMPANY,
Appellee,

v.

Arthur J. Gallagher & Co. of Pennsylvania, Inc., William P. Curtis and Cathy L. James, Additional Defendants.

Superior Court of Pennsylvania.

Argued Nov. 20, 2002.

Filed July 7, 2003.

Reargument Denied Sept. 3, 2003.

John N. Ellison, Philadelphia, for appellant.

Joseph P. Dougher, Philadelphia, for CGU Insurance, appellee.

BEFORE: DEL SOLE, P.J., KLEIN, J., and CAVANAUGH, J.

OPINION BY CAVANAUGH, J.:

¶ 1 The Brickman Group, Ltd., appeals from the trial court's March 27, 2002, order that granted CGU Insurance Company's motion for summary judgment and the May 23, 2002, order that granted Brickman's application for a determination of finality pursuant to Pa.R.A.P. 341(c). We quash the appeals.

¶ 2 The facts, as set forth in Brickman's second amended complaint, are as follows. Brickman is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Langhorne, PA. Brickman is in the business of providing professional landscaping services. CGU is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Boston, MA.[1] CGU is engaged in the business

---

1. In 1999, General Accident Insurance Company of America changed its name to CGU

of selling insurance policies and is a duly licensed insurance company in Pennsylvania. Arthur J. Gallagher & Co. of Pennsylvania, Inc., William P. Curtis, and Cathy L. James are additional defendants in this action, but they are not parties to this appeal.

¶ 3 In 1996, Royal Insurance Company ("Royal") provided Brickman with a five-year premium rate guarantee for Brickman's general liability, workers' compensation, automobile liability, and umbrella liability insurance. In 1997, Royal offered Brickman another five-year rate guarantee for the same lines of insurance, including a five percent rate reduction if Brickman attained a 50 percent loss ratio on all lines of insurance that Royal sold to Brickman.

¶ 4 As a condition of moving its liability insurance program from Royal, Brickman required General Accident to make a five-year insurance program guarantee. In that agreement, General Accident was to guarantee all premium rates for the specified terms and conditions of coverage for all lines of liability insurance, including workers' compensation insurance, automobile liability insurance, commercial general liability insurance, and umbrella liability insurance ("Insurance Program Guarantee"). Brickman communicated this requirement to General Accident both orally and in writing through the agents/brokers at Arthur J. Gallagher & Co. of Pennsylvania, Inc. In June 1997, General Accident agreed to the five-year Insurance Program Guarantee on all lines of liability insurance as long as workers' compensation insurance was included in the package. Although the remaining factual history is long and detailed, it need only be known for the purposes of our present disposition that a disagreement arose as to the existence of the alleged Insurance Program Guarantee from which this action resulted. The ensuing litigation underwent byzan-

tine pleading courses which we must of necessity review.

¶ 5 Brickman filed a complaint against CGU on July 10, 2000. On August 2, 2000, CGU filed its first set of preliminary objections. On August 23, 2000, Brickman filed its first amended complaint in which it set forth claims for breach of contract, specific performance of the contract, breach of fiduciary duty, and bad faith insurance practices in violation of 42 Pa.C.S.A. § 8371.

¶ 6 CGU filed preliminary objections in the nature of a demurrer to the first amended complaint on September 12, 2000. On January 8, 2001, the lower court sustained CGU's preliminary objections to the claims for breach of fiduciary duty and bad faith insurance practices without prejudice and struck both counts from the complaint. The court overruled CGU's preliminary objections to the breach of contract and specific performance claims.

¶ 7 On May 11, 2001, Brickman filed a motion for leave to amend its first amended complaint. Brickman sought to update and expand the factual allegations in the complaint, to reassert a bad faith claim under 42 Pa.C.S.A. § 8371, and to add a claim for fraud. On August 3, 2001, the lower court granted Brickman's motion to add factual allegations but denied the motion to reassert a claim for bad faith or to add a claim for fraud.

¶ 8 Brickman and CGU each filed motions for summary judgment on June 29, 2001, and July 2, 2001, respectively. The lower court denied the parties' cross-motions for summary judgment on October 10, 2001. The court concluded that genuine issues of material fact remained that precluded the grant of summary judgment in either party's favor.

¶ 9 Brickman filed its second amended complaint on August 30, 2001. On October

Insurance Company. The two names are       used interchangeably throughout this opinion.

22, 2001, CGU sought leave to amend its answer, new matter, and counterclaim. The lower court granted CGU's motion by order filed November 30, 2001. In these amended pleadings, CGU raised the affirmative defense of the illegality of contract.

¶ 10 On October 29, 2001, CGU filed a writ of summons against the additional defendants. CGU filed a complaint against the additional defendants on November 21, 2001. In response to the additional defendants' preliminary objections filed on January 30, 2002, CGU filed an amended complaint on February 15, 2002. CGU's amended complaint against the additional defendants alleges in count one a breach of duty to Brickman and in count two a breach of duty to CGU. The complaint avers that the additional defendants are solely liable or liable over to CGU for any damages awarded to Brickman. On March 5, 2002, the additional defendants filed preliminary objections. The additional defendants filed a motion to determine the preliminary objections on April 3, 2002. By order of May 10, 2002, the trial court dismissed the additional defendants' preliminary objections without prejudice "because this case is deferred due to the filing of an appeal."[2] Brickman has not pleaded any allegations against the additional defendants.

¶ 11 On February 15, 2002, CGU filed a motion for partial reconsideration of the denial of its motion for summary judgment. In its motion, CGU asserted that the purported contract upon which Brickman based its complaint violated 40 P.S. § 275 and § 471. Therefore, CGU argued, the contract was illegal and could not be enforced. In an order and opinion filed March 27, 2002, the trial court held that the purported contract was an inducement, that it was a violation of 40 P.S. § 275 and § 471, and that it was unenforceable. Thus Brickman was out of court.

¶ 12 On April 24, 2002, Brickman filed a motion for partial reconsideration of the order granting CGU's motion for summary judgment on the contract claims and of the order denying Brickman's motion for leave to amend to plead a claim for fraud and to re-plead a claim for bad faith. On April 25, 2002, Brickman filed a notice of appeal from the trial court's order filed March 27, 2002. The trial court denied Brickman's motion for reconsideration on April 30, 2002. On May 1, 2002, CGU filed a motion for extraordinary relief to extend the deadline for responding to Brickman's motion for reconsideration. In that motion, CGU notes that the trial court's order filed March 27, 2002, granting summary judgment in favor of CGU did not address CGU's third party complaint against the additional defendants. CGU further notes in its motion that the appealability of the court's summary judgment order filed March 27, 2002, had not yet been determined. On May 2, 2002, CGU filed a praecipe to withdraw its motion for extraordinary relief filed on May 1, 2002. On May 17, 2002, Brickman filed an application for determination of finality. In that application, Brickman states, "The claims against the Additional Defendants

---

**2.** CGU indicated in its memorandum of law in opposition to additional defendants' motion to determine preliminary objections that it sought consent from Brickman and additional defendants to discontinue its third-party complaint. Additional defendants responded by stating that they considered the third-party complaint to be moot following the trial court's March 27, 2002, order granting summary judgment in favor of CGU. Brickman

did not respond. CGU further stated that it was willing to voluntarily discontinue its third-party complaint without prejudice. The only details relevant to our inquiry, however, are that the complaint remained pending at the time of the April 25, 2002, notice of appeal, that the application for determination of finality was untimely, and that no final, appealable order exists over which we may establish jurisdiction.

will be greatly affected by the result on appeal. It makes little sense to go forward with the action against the Additional Defendants prior to resolution of the issues on appeal." On May 23, 2002, the lower court granted Brickman's application. Brickman filed a second notice of appeal from the trial court's May 23, 2002, order on May 29, 2002. The notices of appeal were consolidated by stipulation of the parties.

■■■ ¶ 13 Prior to reaching the merits of the appeal, we address the threshold question of jurisdiction. Appellee does not challenge the appealability of the orders before us. We may, however, raise the issue *sua sponte* because it affects the jurisdiction of the court. *O.D. Anderson, Inc. v. Cricks,* 815 A.2d 1063, 1067 (Pa.Super.2003) (citation omitted).

¶ 14 "[A]n appeal may be taken as of right from any final order of an administrative agency or lower court." Pa.R.A.P. 341. The rule defines final order:

(b) **Definition of Final Order.** A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) any order that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subdivision (c) of this rule.

¶ 15 The rule also provides a trial court with the option of entering a final order that does not qualify under the preceding provisions "upon an express determination that an immediate appeal would facilitate resolution of the entire case." Pa.R.A.P. 341(c). Specific timeliness conditions stated in mandatory terms apply to such a determination. The trial court "is required to act on an application for a determination of finality under subdivision (c) within 30 days of entry of the order." Pa.R.A.P. 341(c)(1). The rule also states, "Unless the trial court...acts on the application within 30 days of entry of the order,

the trial court...shall no longer consider the application and it shall be deemed denied." Pa.R.A.P. 341(c)(3).

¶ 16 In the instant case, the March 27, 2002, order dismissed Brickman's remaining claims against CGU. CGU's claims against the additional defendants, however, remained pending. Notwithstanding this impediment to finality, Brickman urges that, in those cases where an order "does not fit any of these [Rule 341(b)] definitions perfectly," this court should "consider whether the practical ramification of the order will be to dispose of the case, making review appropriate." *Kulp v. Hrivnak,* 765 A.2d 796, 798 (Pa.Super.2000). We first note that the preceding language from *Kulp* traces its origin to caselaw evaluating the appealability of orders prior to the 1992 amendment of Rule 341. *See Kulp,* 765 A.2d at 798 (citing *Commonwealth v. J.H.B.,* 760 A.2d 27, 28 (Pa.Super.2000)) ("In ascertaining what is a final appealable order, this Court must look beyond the technical effect of the adjudication to its practical ramifications.") (quoting *Grove North America v. Arrow Lift & Constr. Equip. Co.,* 421 Pa.Super. 12, 617 A.2d 369, 372 (1992)). The court in *Robert H. McKinney, Jr., Associates, Inc. v. Albright,* 429 Pa.Super. 440, 632 A.2d 937 (1993), explained the significance of the 1992 amendment:

Case law which interpreted the earlier provisions of Rule 341, considered final all orders which had a practical consequence of putting a litigant out of court. These included instances where a party was dismissed from a case or, in some circumstances, where some, but not all of the counts of a multi-count complaint were dismissed...Thus finality was often determined without regard to the fact that the litigation did not end as to all claims or all parties. However, under the amended version of Rule 341, as quoted above, this is no longer the case

for actions commenced after July 6, 1992. Under the amended rule an appeal may not be taken from an order dismissing less than all claims or all parties from a case. An exception to this general rule exists under subparagraph (c), whenever an express determination has been made by the trial court that an immediate appeal would facilitate resolution of the entire case.

*Id.* at 938–39.

¶ 17 Brickman maintains that the conditional nature of CGU's claims against the additional defendants rendered them essentially dismissed upon the granting of summary judgment in favor of CGU. Therefore, Brickman asserts, we should consider that the "practical ramification" of the order is to dispose of the entire case. Yet, it has been firmly established since the promulgation of the 1992 amendment to Pa.R.A.P. 341 that orders can be considered final and appealable only if they meet the requirements set forth in the rule. *Keefer v. Keefer,* 741 A.2d 808 (Pa.Super.1999) (quashing appeal where three actions consolidated into one and order did not dismiss all claims and all parties arising under the three actions); *Prelude, Inc. v. Jorcyk,* 695 A.2d 422 (Pa.Super.1997) (*en banc*) (quashing appeals where order did not dismiss all defendants and finality determination under 341(c) was not pursued notwithstanding the fact that two remaining defendants had filed for federal bankruptcy protection); *Bonner v. Fayne,* 441 Pa.Super. 432, 657 A.2d 1001 (1995) (quashing appeal where summary judgment granted in favor of one original defendant where two original defendants and one additional defendant remained); *Columbia Gas of Pennsylvania, Inc. v. Carl E. Baker, Inc.,* 446 Pa.Super. 481, 667 A.2d 404 (1995) (quashing appeal where order granting judgment on the pleadings dismissed additional defendants but left pending the claims against the original defendant); *Robert H. McKinney,*

*Jr., Associates, Inc.,* 632 A.2d at 937 (quashing appeal where one defendant dismissed on preliminary objections and one defendant remained).

¶ 18 As stated by the majority in *Prelude,* 695 A.2d at 422, "Rule 341 is fundamental to the exercise of jurisdiction by this court. It is not surprising, therefore, that the rule has been rigorously applied." *Id.* at 424 (collecting cases). In *Prelude,* the case had been dismissed against all but two defendants. The two remaining defendants both had filed for federal bankruptcy protection. The court held that the order dismissing less than all of the defendants was not a final, appealable order. The court further noted that no finality determination pursuant to 341(c) had been pursued. Therefore, the court held that it did not have jurisdiction over the case and quashed the appeal. The dissent argued Brickman's position, stating, "Because Prelude has, in effect, been put out of court, I believe that an immediate appeal from the trial court's order is warranted." *Id.* at 425–426. The dissent, while conceding that the appeal did not meet the requirements of Rule 341 nevertheless found quashal to be an "inequitable" result and urged a "liberal construction of Rule 341." *Id.* at 425.

¶ 19 In *Liberty State Bank v. Northeastern Bank of Pennsylvania,* 453 Pa.Super. 231, 683 A.2d 889 (1996), the court also rejected an argument similar to that now advanced by Brickman, stating, "A Rule 341(b)(1) Order, however, is not an order that has the 'practical effect' of disposing of all claims, but, rather is an order that resolves all claims as to all parties." *Id.* at 889.

¶ 20 As the majority in *Prelude* noted, Rule 341(c) states, "In the absence of such a [finality] determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the

claims and parties shall not constitute a final order." The note following the rule states:

> The 1992 amendment generally eliminates appeals as of right under Rule 341 from orders not ending the litigation as to all claims and as to all parties. Formerly, there was case law that orders not ending the litigation as to all claims and all parties are final orders if such orders have the practical consequence of putting a litigant out of court.

Pa.R.A.P. 341 note.

¶ 21 The note further provides a partial list of orders previously interpreted by the courts as final orders that are no longer appealable absent a determination of finality pursuant to Rule 341(c). The list includes, in part:

> (4) an order dismissing an action as to less than all plaintiffs or as to less than all defendants but leaving pending the action as to other plaintiffs and other defendants;[3]

■ ¶ 22 The March 27 order does not dispose of all claims and of all parties. It is not a final and appealable order. The April 25 appeal must be quashed.

■ ¶ 23 Brickman also filed a notice of appeal from the May 23, 2002, order that granted Brickman's application for determination of finality of the order granting summary judgment. The order granting summary judgment was filed March 27, 2002. Brickman's application for determination of finality was filed May 17, 2002. On May 23, 2002, the trial court granted Brickman's application. As this application was filed beyond 30 days after the March 27 order was filed, the trial court could not have timely acted on the application. Pa.R.A.P. 341(c)(1), (3); *see also Korn v. Desimone Reporting Group, Inc.,*

454 Pa.Super. 273, 685 A.2d 183 (1996) (quashing appeal where trial court failed to act on application pursuant to 341(c) within 30 days of the entry of its order); *Liberty State Bank,* 683 A.2d at 890 (holding that trial court's order certifying its previous order for immediate appeal pursuant to Pa.R.A.P. 341(c) was untimely as it was beyond 30 days after the order was entered). Therefore, the notice of appeal filed May 29, 2002, must also be quashed.

¶ 24 Appeals quashed. Jurisdiction relinquished.

¶ 25 Judge KLEIN files a concurring opinion.

## CONCURRING OPINION BY KLEIN, J.:

¶ 1 I agree with the majority that if an application for determination for finality is filed more than thirty days after the order in question, the trial court cannot act on this application. *See* Pa.R.A.P. 341(c)(1), (3). Therefore, while Judge Herron's determination that an immediate appeal would facilitate resolution of the entire case may be accurate, he was out of time to enter such an order.

¶ 2 This situation creates difficulties, because neither party raises the issue of appealability and it is not addressed by the trial court. A review of the record does seem to indicate that the additional defendants are still in the case and that the plaintiff can maintain an action against them. *See* Pa.R.C.P. 2252, 2255(d). If that is not the case, the remedy would have to be a petition for reconsideration before this panel.

---

**3.** A writ of summons filed by an original defendant against an additional defendant constitutes an "action." *Cummings v. Elin-sky,* 803 A.2d 850, 851–852 (Pa.Cmwlth. 2002); Pa.R.C.P. 2251; Pa.R.C.P. 2255(a).