J-A03017-24

2024 PA Super 124

| | | |
|---|---|---|
| G.K., A MINOR, BY AND THROUGH HIS PARENT AND NATURAL GUARDIAN, BRITTANY KUGEL AND BRITTANY KUGEL AND KENNETH KUGEL, IN THEIR OWN RIGHT | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| CHRISTINA M. LABELLA, M.D., ALLEGHENY CLINIC D/B/A WESTERN PENNSYLVANIA OB/GYN ASSOCIATES AND ALLEGHENY HEALTH NETWORK | : : : : : : | |
| Appellants | : : | No. 367 WDA 2023 |

Appeal from the Order Entered March 7, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 18-000478

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

DISSENTING OPINION BY BOWES, J.: **FILED: June 10, 2024**

I respectfully dissent.  I believe that my esteemed colleagues have taken out of context a footnote from my opinion in ***U.S. Bank Tr. Nat'l Ass'n as Tr. of Lodge Series III Tr. v. Unknown Heirs Under Brolley***, 278 A.3d 310 (Pa.Super. 2022) ("***U.S. Bank Trust***"), to reach an incorrect ruling in this case.  In my view, the appellants' (hereinafter "AHN") motion to strike the discontinuance had no impact on the appealability of the final order granting the appellees' motion to voluntarily discontinue the minor plaintiff's claims without prejudice.  For the reasons stated below, rather than quashing the

appeal, I would review the questions presented by AHN and vacate the trial court's order.

I begin with our jurisdiction over this appeal. The Majority holds that, while a voluntary discontinuance that disposes of all claims and all parties constitutes a final judgment, AHN's filing of a motion to strike the discontinuance converted the final judgment into an unappealable interlocutory order. *See* Majority Opinion at 3-4. I disagree.

By way of background, our Supreme Court has explained that leave of court, express or implied, is required in all instances of a discontinuance:

> A discontinuance in strict law must be by leave of court, but it is the universal practice in Pennsylvania to assume such leave in the first instance. This was stated to be the established practice as long ago as 1843[.] All the cases show that a discontinuance must be founded on the express or implied leave of the court. In England this leave is obtained on motion in the first instance, and here it is taken without the formality of an application, but subject to be withdrawn on cause shown for it; that is the whole difference. The causes which will move the court to withdraw its assumed leave and set aside the discontinuance are addressed to its discretion, and usually involve some unjust disadvantage to the defendant or some other interested party, such as a surety.

*Fancsali ex rel. Fancsali v. Univ. Health Ctr. of Pittsburgh*, 761 A.2d 1159, 1161–62 (Pa. 2000) (cleaned up).

With the promulgation of Pa.R.Civ.P. 229, our High Court specified when court involvement is necessary before the discontinuance is filed and when the leave is presumed. That Rule provides is as follows in relevant part:

> (a) A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before commencement of the trial.

- 2 -

(b)(1) Except as otherwise provided in subdivision (b)(2), a discontinuance may not be entered as to [fewer] than all defendants except upon the written consent of all parties or leave of court upon motion of any plaintiff or any defendant for whom plaintiff has stipulated in writing to the discontinuance.

(2) In an action governed by Rule 1042.3, a plaintiff may enter a discontinuance as to a defendant if a certificate of merit as to that defendant has not been filed.

. . . .

(c) The court, upon petition and after notice, may strike off a discontinuance in order to protect the rights of any party from unreasonable inconvenience, vexation, harassment, expense, or prejudice.

> *Note*: Court approval of a discontinuance must be obtained in any action in which a minor is a party, Rule 2039(a), an action for wrongful death in which a minor is beneficially interested, Rule 2206(a), an action in which an incapacitated person is a party, Rule 2064, and a class action, Rule 1714.

Pa.R.Civ.P. 229.

Hence, if the plaintiffs or wrongful death beneficiaries are all adults, are not incapacitated, and do not represent a class, and they either wish to discontinue the whole action or have the consent of the remaining defendants to dismiss fewer than all, then leave of court is presumed, and the court will not examine the propriety of the discontinuance unless presented with a petition to strike. However, if the interests of minors, incapacitated persons, or a class are involved, or one or more defendants objects to fewer than all of them being discontinued, then the court examines the equities of the

discontinuance and any objections thereto before the discontinuance is permitted.

Significantly, our Supreme Court has indicated that "**the question is the same whether it is placed before the court by the plaintiff requesting express leave to discontinue or by the defendant seeking to have a discontinuance stricken**." *Fancsali*, 761 A.2d at 1162 (emphasis added). "Moreover, it is clear that the question is addressed to the court's discretion" in either event. *Id*.

*U.S. Bank Trust*, the case relied upon by the Majority, presented an unusual factual pattern. There, the question of the propriety of the plaintiff's unilateral discontinuance was placed before the trial court for the first time when the plaintiff's successor-in-interest, not a defendant, filed a petition to strike the continuance seven years after it was entered. On appeal from the denial of the petition to strike, this Court questioned the timeliness of the appeal filed well beyond the time for appealing the judgment since it was well-settled that the initial discontinuance was a final, appealable judgment. *See U.S. Bank Trust*, 278 A.3d at 315 n.3.

We ultimately concluded that the court's consideration and denial of praecipe to strike the discontinuance constituted new proceedings in the case that resulted in a new appealable order. *Id*. Therefore, we proceeded to examine whether the trial court's refusal to strike the discontinuance was an abuse of discretion and concluded that it was because the praecipe to

discontinuance was "improper, invalid, and erroneous." *Id*. at 319. We explained that the discontinuance was in effect "a collateral assault on the judgment and an attempt to circumvent its preclusive effect." *Id*. Holding that Pennsylvania law must not tolerate a "practice that would allow one party to a litigation to discharge a final judgment on its own authority," we reversed the trial court's denial of the motion to strike.

In my view, *U.S. Bank Trust* speaks only to instances in which a party seeks to discontinue its case to avoid an unfavorable final judgment. At most, the decision stands for no broader a proposition than that a motion to strike amounts to a new proceeding in a case, and results in a new appealable order, where the plaintiff unilaterally discontinued the action by praecipe and the court had its first opportunity to exercise discretion about the propriety of the discontinuance in ruling on the petition to strike it. In such cases, an appeal may be properly taken from the dispositional order to allow appellate review of the trial court's decision.

By contrast, in the instant case, the trial court exercised discretion concerning the propriety of the discontinuance before it was entered in the first place. Thus, the petition to strike did not add anything new to the case, but merely asked the court to revisit a question it had already answered and reach a different result. In other words, AHN's petition to strike was for all practical purposes a motion for reconsideration, the pendency of which has no impact upon the appealability of an underlying appealable order. *See*, *e.g.*,

*Gardner v. Consol. Rail Corp*., 100 A.3d 280, 283 (Pa.Super. 2014) ("[I]t is well-settled that a motion for reconsideration, unless expressly granted within the thirty-day appeal period, does not toll the time period for taking an appeal from a final, appealable order.").

Accordingly, I would not quash this appeal as premature, but rather examine AHN's challenges to the trial court's exercise of its discretion. In this vein, I observe:

> When the trial court reaches a conclusion calling for the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion under the same factual situation. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Fancsali*, 761 A.2d at 1162 (cleaned up).

In ruling on the propriety of a discontinuance, "[t]he trial court must consider all facts and weigh equities, while bearing in mind the benefits or injuries which may result to the respective sides if discontinuance is granted." *U.S. Bank Trust*, 278 A.3d at 317 (cleaned up). Those factors enumerated in Rule 229, *i.e.*, unreasonable inconvenience, vexation, harassment, expense, or prejudice, pertain whether the trial court is asked to strike a discontinuance taken with implied leave of court, or "where the court is asked to give express permission for a discontinuance." *Fancsali*, 761 A.2d at 1162. Where express court approval is required pursuant to Pa.R.Civ.P. 2039

- 6 -

because a minor is involved, there are "additional elements for the court's deliberation." ***Id***. As our Supreme Court has explained:

> Rule 2039 was adopted to ensure that the interests of minor litigants are protected above all other conflicting interests. Of course, the context of this statement is not to be overlooked. In [the] setting [of a settlement], where the Rule operates as a mechanism for trial courts to prevent unfair settlements, the interests of the minor are bound to be of primary if not preclusive effect. In the context of cases not involving a compromise and settlement, however, it may be appropriate to accord somewhat lesser weight to the interests of the minor. Nevertheless it is clear that in deciding whether to allow the discontinuance of an action involving a minor, the court must give some consideration to the interests of the minor in addition to considering unreasonable inconvenience, vexation, harassment, expense and prejudice.

***Fancsali***, 761 A.2d at 1162–63 (cleaned up).

AHN's chief argument is that the trial court did not "properly analyze, identify, and weigh the required factors that affect [AHN's] rights and interests," and instead focused solely on the interests of the minor, in particular the possibility that he could realize additional damages in the future. AHN's brief at 27. AHN contends that the instant case is materially indistinguishable from our decisions in ***Foti v. Askinas***, 639 A.2d 807 (Pa.Super. 1994), and ***Gray ex rel. Gray v. Magee***, 864 A.2d 560 (Pa.Super. 2004), in which we deemed voluntary discontinuances of minors' claims without prejudice to be improper.

In ***Foti***, this Court held that the trial court abused its discretion in allowing the minor's claims to be discontinued without prejudice for the following reasons:

- 7 -

In the present case, the combination of the discontinuance without prejudice and the Minority Tolling Statute provides the appellee-minor with an advantage. A suit was initiated by the appellee-minor's parents, on behalf of the appellee-minor. However, appellees were unable to present an expert witness to establish that appellants were negligent, and, therefore, appellees filed a motion to discontinue. The trial court's order to discontinue without prejudice, in essence, allows the appellee-minor to have twelve years to locate expert testimony needed to proceed with her case.

. . . .

We must also consider the effect that a discontinuance without prejudice has on appellants. At the time of the discontinuance, this case had been pending for almost five years. We note that this period was protracted by appellee's resistance to appellants' discovery efforts. Depositions had been taken, interrogatories exchanged and several motions ruled on by the court. Appellants were prepared to go forward with the case. Much of the effort and expense appellants have already expended will have to be repeated if the appellee-minor chooses to file suit again.

. . . .

We find that a discontinuance without prejudice would provide an advantage to the appellee-minor and would prejudice appellants. Accordingly, we hold that the trial court abused its discretion by granting the appellee-minor's motion to discontinue without prejudice. If we held otherwise, appellants, who endured the burden of litigating the initial suit for almost five years, may again be subjected to the same litigation. The appellee-minor, however, would benefit immeasurably by the extended period she would have to prepare her case for a second time.

*Foti*, 639 A.2d at 809–10 (cleaned up).

Notably, our Supreme Court in *Fancsali* expressly disapproved the *Foti* Court's reliance upon a supposed advantage a minor in such a situation would realize by having an additional decade to hope the science was developed and to find a favorable expert witness:

> We fail to see how [the minor] would be in any better position vis-à-vis the [defendant] than any other minors would vis-à-vis their defendants simply because an action on her behalf was commenced by writ of summons and later discontinued. Similarly, we cannot attribute as prejudice the fact that the [defendants] would have the threat of a potential lawsuit hanging over their heads for many years. This "threat" is in no way connected to the commencement or discontinuance of the action. It is, rather, entirely a function of the Minority Tolling Statute. The [defendants] would be subject to the same "threat" of a potential lawsuit by [the minor] if the action filed on her behalf were discontinued without prejudice as they would have been had that action never been filed.

*Fancsali*, 761 A.2d at 1164 (cleaned up). Nonetheless, our High Court declined to overrule *Foti* "because the Superior Court in *Foti* applied the correct standard, and its conclusion that the common pleas court abused its discretion was supported by other, valid considerations specific to the circumstances of the case[.]" *Id*. at 1164 n.6.

Turning to the merits of that case, the *Fancsali* Court reversed the trial court's denial of the discontinuance without prejudice:

> Here, the action was commenced by writ of summons, but no complaint was ever filed. Counsel entered appearances on behalf of the [the defendants], but there was little or no court activity on behalf of the [the defendants] beyond ruling the plaintiffs to file a complaint. Medical records were forwarded to the [plaintiffs'] counsel shortly after the action was commenced, but there was no further discovery as such. Finally, the [plaintiffs] did not concede that no expert could be found to establish negligence. Rather, they asserted that neither they nor their attorney could afford to advance the money necessary to have an expert examine their records, a representation the common pleas court apparently accepted. Thus, the [defendants] demonstrated neither unreasonable inconvenience, expense, nor any of the other considerations identified in Rule 229 as considerations weighing against allowing a discontinuance. On the other side of the balance is the minor's interest in being able to seek legal redress

- 9 -

for damages within the time and according to the procedures established by law.

*Id*. at 1165 (footnote omitted).

Subsequently, this Court in *Gray* deemed a discontinuance without prejudice inappropriate in a case more factually similar to *Foti* than to *Fancsali*. In *Gray*, the medical malpractice action brought on behalf of a minor was pending for five years and, despite repeated discovery extensions, the parents were unable to secure an expert report after their initial expert died. *See Gray*, 864 A.2d at 565. When the defendants moved for summary judgment, the plaintiffs sought to discontinue the action rather than have judgment entered against them and the minor. The trial court granted summary judgment without ruling upon the discontinuance request. On appeal, the plaintiffs contended that the trial court erred in granting summary judgment before addressing their discontinuance petition. This Court held that no relief was due because "the granting of a discontinuance in this case would have been improper" based upon *Foti*. *See Gray*, 864 A.2d at 565-66.

The case sub judice is firmly in line with *Foti* and *Gray* and not *Fancsali*. Here, the minor's parents initiated the case shortly before he reached two years of age, alleging that AHN was negligent in their prenatal care, causing the child to be born prematurely and suffer developmental delays and related conditions, as well as an increased risk of suffering future damages. The plaintiffs obtained a certificate of merit, "conducted extensive

medical research, and undertook discovery including filing and responding to several sets of interrogatories and requests for production" in addition to conducting or participating in the depositions of four physicians and plaintiffs. *See* Petition to Discontinue without Prejudice, 3/7/23, at ¶ 4. After five years, and only two months before their trial date, the parents expressed a unexplained desire not to pursue the litigation, but sought to dismiss the minor's claims without prejudice because he might wish to pursue an action in his own right should he develop future injuries related to his premature birth. *Id*. at ¶¶ 8-9.

The trial court granted the plaintiffs' petition without explanation. In its opinion for this appeal, the court stated its reasoning as follows:

> In this case, this [c]ourt weighed the stated factors and determined overwhelmingly that the potential prejudice to the minor child should he not be able to file a cause of action in the future due to later found injuries that he suffered as a result of his premature birth far outweighed the prejudice to the physicians and the hospital in possibly defending an action by the minor child in the future. The [c]ourt does not find any vexation or harassment to be present. While it may be inconvenient and cause expense to [AHN] in the future, such can be significantly reduced by preserving the previously-conducted discovery (*i.e.*, medical records and, deposition transcripts) in a safe/secure location pending expiration of the statute of limitations. Also, [AHN] can record statements, which could later be used to refresh their recollection, if necessary.

Trial Court Opinion, 5/1/23, at 3.

In light of the precedent detailed above, I am constrained to agree with AHN that the trial court's ruling is an abuse of discretion. This case is not akin to *Fancsali* where a writ of summons was filed and nothing else was done.

- 11 -

Here, as in **Foti** and **Gray**, the plaintiffs litigated the minor's claim for five years and conducted extensive discovery, including interrogatories and at least six depositions. Plaintiffs further caused AHN to prepare for trial by filing a praecipe to place the case at issue and obtaining a trial date. Under these circumstances, I would apply the analogous precedent and rule that a discontinuance without prejudice is improper.

Accordingly, I would vacate the trial court's March 7, 2023 order and, as did the **Foti** Court, remand to allow the plaintiffs to withdraw their petition and proceed with the minor's claims in the instant action. If they declined, I would instruct the trial court to order the case discontinued with prejudice. **See Foti**, 639 A.2d at 810. Since the majority quashes this appeal as premature instead of reaching that result, I respectfully dissent.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/10/2024